UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FUTURE ENERGY GROUP, LLC, dba FUTURE ENERGY, <br><br> Plaintiff, <br><br> v. <br><br> CHARGEPOINT, INC., <br><br> Defendant. | Case No.  5:25-cv-10568-SVK <br><br> **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT.** <br><br> Re:  Dkt. No. 30 |

This action arises out of a contractual relationship between Defendant manufacturer ChargePoint, Inc. ("ChargePoint") and Plaintiff Future Energy Group, LLC ("Future Energy"), a reseller of Defendant's products.  Future Energy filed its original complaint on December 10, 2025.  *See* Dkt. 1.  On February 19, 2026, in lieu of opposing ChargePoint's first motion to dismiss, Future Energy filed the First Amended Complaint.  Dkt. 23 (the "FAC").  The FAC asserts causes of action for:  (1) breach of contract, (2) intentional interference with prospective economic advantage, (3) trade secret misappropriation under the California Uniform Trade Secrets Act ("CUTSA") and (4) promissory fraud.  The Parties have consented to magistrate judge jurisdiction.  Dkts. 15, 18.

Before the Court is ChargePoint's motion to dismiss the FAC.  Dkt. 30 (the "Motion").  Future Energy opposes the motion.  Dkt. 31 (the "Opposition" or "Opp.").  The Motion is suitable for resolution without oral argument.  Civil L.R. 7-1(b).  Having considered the Parties' submissions, the relevant law and the record in this action, the Court **GRANTS** the Motion as specified below.

////

////

////

United States District Court
Northern District of California

United States District Court
Northern District of California

## I.   FACTUAL BACKGROUND

ChargePoint manufactures electric vehicle supply equipment.[1]  FAC ¶¶ 1, 10.  On November 27, 2019, ChargePoint entered into a Reseller Agreement with Future Energy, granting Future Energy the non-exclusive right to resell ChargePoint equipment throughout the United States.  FAC ¶ 10;  Dkt. 23-1 at 1-20 (the "Reseller Agreement").

Between June and November 2021, the Parties communicated regarding a potential resale pipeline to Stellantis dealerships and their affiliates.  FAC ¶ 14;  Dkt. 23-7 ("Ex. G").  During those communications, Future Energy provided ChargePoint with its "confidential Stellantis Affiliated Dealer lists."  FAC ¶ 14;  Ex. G at 2, 4-5, 7.  On June 16, 2021, Future Energy first sent ChargePoint a list "provided by Stellantis" identifying over 2,600 Stellantis dealerships.  Ex. G at 2.  Future Energy then transmitted "the *full* Stellantis dealer list" on July 16 and July 28, 2021.  *Id.* at 4-5 (emphasis added).

On March 8, 2022, the Parties executed an addendum to the Reseller Agreement, which addressed Future Energy's rights to resell ChargePoint equipment to Stellantis dealerships and their affiliates.  FAC ¶ 9;  Dkt. 23-1 at 21-30 (the "Addendum").  This action arises out of the Addendum's non-solicitation provision, which provides:

> During the term of the Addendum and for ninety (90) days from the effective date of termination, ChargePoint shall not knowingly solicit or attempt to solicit [Stellantis] Affiliated Dealers that are current Customers of [Future Energy] …

Addendum § 9(a)(i).

Future Energy alleges that at two Stellantis dealerships ChargePoint equipment was installed without Future Energy's involvement:  Rose City Chrysler in Welland, Ontario (the "Ontario Dealership") and Chrysler Dodge Jeep Ram in Troy, Michigan (the "Michigan Dealership").  FAC ¶ 19;  Dkts. 23-2–3 ("Ex. B" and "Ex. C", respectively).  According to Future Energy, these installations reflect a "broader pattern" of ChargePoint "knowingly soliciting

---

[1] For purposes of resolving the Motion, the Court accepts the factual allegations in the FAC as true.  *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

Stellantis Affiliated Dealers without notice or consultation with … Future Energy" in violation of the Addendum's non-solicitation provision.  FAC ¶ 20.

Future Energy also alleges that, on June 1, 2023, ChargePoint's Director of Channel Sales, Brian McKinnon, sent correspondence assuring Future Energy that "no competitive use of Future Energy's … relationships would occur."  FAC ¶ 21 (citing Dkt. 23-4 ("Ex. D")).  Future Energy contends that this statement was knowingly false because ChargePoint thereafter continued to "directly solicit" Future Energy's customers.  FAC ¶¶ 62-63.

Finally, Future Energy alleges that ChargePoint relied on the "Stellantis Affiliated Dealer lists" transmitted during the Parties' earlier communications to identify and solicit Future Energy's customers, thereby misappropriating Future Energy's trade secret rights under CUTSA.  *See* FAC ¶¶ 52, 54.

## I.   LEGAL STANDARD

### A.   Rule 12(b)(6) – Failure to State a Claim

Rule 12(b)(6) provides for a dismissal of an action for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In deciding a Rule12(b)(6) motion, a court may consider only "the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice."  *Metzler Inv. GmbH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).  Courts generally "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party."  *Manzarek*, 519 F.3d at 1031.  However, a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).  Nor must the court "assume the truth of legal conclusions merely because they are cast in the form of factual allegations."  *Fayer v.Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This "facial plausibility" standard requires the claimant to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S.

United States District Court
Northern District of California

3

662, 678 (2009).

**B.     Rule 9(b) – Heightened Pleading Standard for Fraud Claims**

Allegations of fraud implicate Rule 9(b)'s heightened pleading standard, which requires a party to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To meet this threshold, a plaintiff must "set forth more than the neutral facts necessary to identify the transaction" and plead the "who, what, when, where, and how of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citation omitted). Aside from this heightened pleading requirement, a motion to dismiss "under Rule 9(b) for failure to plead with particularity is the functional equivalent of a motion to dismiss under Rule 12(b)(6) for failure to state a claim." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).

**II.     DISCUSSION**

**A.     Count I:  Breach of Contract**

**1.     Future Energy's Claim for Breach of Contract is Resolvable at the Dismissal Stage**

Future Energy's first cause of action alleges that ChargePoint breached the Addendum's non-solicitation provision. *See* FAC at 9-12. In opposing the Motion, Future Energy argues that the term "Customers," as used in the provision, is "ambiguous as to whether it encompasses dealers who purchased ChargePoint products through a reseller." Opp. at 15. Accordingly, Future Energy argues that, as a threshold matter, the Court cannot resolve the breach of contract claim at the pleading stage. *Id.* The Court disagrees.

"The interpretation of a contract presents a mixed question of law and fact." *ASARCO, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999, 1990 (9th Cir. 2014). Although the interpretation of an ambiguous contract presents a factual issue that generally cannot be resolved on a motion to dismiss, the existence of an ambiguity is itself a question of law. *Id.* Where a contract expressly defines the disputed term, no ambiguity exists at the pleading stage. *See, e.g.*, *Cross Med. Prods, LLC v. Alphatec Spine, Inc*, No. 10-cv-00176-MRP (MLGx), 2011 WL 13182934, at *2 (C.D. Cal. Feb. 25, 2011).

Here, the Addendum expressly defines the disputed term:

> WHEREAS, Reseller [Future Energy] and ChargePoint are Parties to the Agreement which addresses Reseller's ability to act as a reseller of ChargePoint Products and Services … *to end-user customers ("Customers").*

Addendum, Recitals ¶ 1 (emphasis added). Nothing in this definition limits "Customers" to entities that purchased products directly from ChargePoint. To the contrary, the definition expressly describes Future Energy's role as a reseller and identifies "Customers" as the end-users to whom Future Energy resells the equipment. Future Energy's proposed construction therefore fails as it would conflict with the plain language of the Addendum. *See Bayview Hunters Point Cmty. Advocs. v. Metro. Transp. Comm'n*, 366 F.3d 692, 700 (9th Cir. 2004) (citation omitted).

The Court finds that the Addendum clearly and unambiguously defines "Customers" to include dealers that purchased ChargePoint products from Future Energy, consistent with both parties' own interpretations. *See* Dkt. 31 at 15-16; Dkt. 32 at 6. Accordingly, the Court may resolve this dispute at the motion to dismiss stage and proceed to analyze whether Future Energy has stated a breach of contract claim under this definition.

### 2. Future Energy's Breach of Contract Claim Fails as it is Pleaded

Future Energy alleges that ChargePoint "willfully materially breached the Reseller Agreement and Addendums by its prohibited direct solicitation of other Stellantis Affiliated Dealers." FAC ¶ 37. To state a claim for breach of contract, a plaintiff must allege: (1) the existence of a valid contract; (2) the plaintiff's performance or excuse for nonperformance; (3) the defendant's breach; and (4) the resulting damage to plaintiff. *Reichert v. General Ins. Co.*, 68 Cal. 2d 822, 830 (1968). ChargePoint challenges only the third element, *i.e.*, Future Energy's allegation that ChargePoint breached the non-solicitation provision.[2] *See* Mot. at 14-18.

As the Parties appear to agree, the Addendum's non-solicitation provision requires three predicate conditions: (1) that ChargePoint interacted with Stellantis dealerships that were current

---

[2] The FAC also alleges that ChargePoint breached the Addendum's conflict-notice provision. FAC ¶ 39. ChargePoint's argument challenging that claim, however, is the same as its challenge to the non-solicitation provision. *See* Opp. at 15. Thus, the Court does not address it separately.

United States District Court
Northern District of California

Future Energy customers, (2) that ChargePoint knew of their current customer status and (3) that ChargePoint affirmatively solicited their business. Addendum § 9(a)(i); *see also* Mot. at 15; Opp. at 13. In alleging a defendant's breach, it is not enough that the plaintiff "conclusorily recite[]" the contract language. *See, e.g. SriCom, Inc. v. EbisLogic, Inc.*, No. 12-cv-00904-LHK, 2012 WL 4051222, at *6 (N.D. Cal. Sept. 13, 2012). Thus, Future Energy's conclusory assertions that ChargePoint "knowingly and repeatedly solicited" Stellantis Affiliate Dealers are insufficient – each predicate condition must be plausibly pleaded. As explained in detail below, the Court finds that none are sufficiently alleged by Future Energy.

### a. Future Energy Can Not Allege the Identity of its Own Current Customers on Information and Belief

Future energy alleges "upon information and belief" that all dealerships solicited by ChargePoint, including the Ontario and Michigan Dealerships, were its current customers. FAC ¶ 20. Although this Circuit permits pleading on information and belief, it is appropriate only where the facts are "peculiarly within the possession and control of the defendant." *Franey v. Advanced Micro Devices, Inc.*, No. 25-cv-06693-SVK, 2025 WL 3281420, at *4 (N.D. Cal. Nov. 25, 2025) (quoting, *inter alia, Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017). Conversely, such allegations are improper where the plaintiff has reason to know the facts underlying the claim. *E.g., Mendez v. AstraZeneca Pharms. LP*, No. 12-cv-00535-LJO (DLB), 2012 WL 1911382, at *2 (E.D. Cal. May 25, 2012).

The identity of Future Energy's *own* current customers is a fact uniquely within its possession, not ChargePoint's. Accordingly, pleading on information and belief is insufficient to plausibly allege that the solicited dealerships were "current customers" under the Addendum.[3] The Court thus **GRANTS** ChargePoint's Motion to Dismiss on this ground, **with leave to amend** for the reasons set forth in Section III.E., below.

////

---

[3] Although Future Energy may not know the identity of every dealership allegedly solicited by ChargePoint, it must allege facts plausibly showing that the Ontario and Michigan Dealerships were current customers covered by the Addendum.

**b. Future Energy Has Not Plausibly Alleged That ChargePoint Had Knowledge of Future Energy's Current Customers**

Future Energy next argues that ChargePoint's receipt of the "Stellantis Affiliated Dealer lists" containing more than 2,600 dealerships provided ChargePoint with notice of Future Energy's current customer base. *See* FAC ¶¶ 36, 47; *see also* Ex. G at 1. The Court disagrees.

Establishing knowledge of a customer relationship requires more than "generalized knowledge" of an entity's relationships, *e.g.*, affiliations, within an industry. *Trindade v. Reach Media Grp., LLC*, No. 12-CV-4759-PSG, 2013 WL 3977034, at *15 (N.D. Cal. Jul. 31, 2013). Had Future Energy alleged that the dealer list identified which dealerships had actually purchased from Future Energy, that would suffice. *See Go Daddy Operating Co., LLC v. Ghaznavi*, No. 17-cv-06545-PJH, 2018 WL 1091257, at *10 (N.D. Cal. Feb. 28, 2018) (finding knowledge adequately alleged where defendants queried a public database to filter plaintiff's customers). But the FAC contains no such allegation. Indeed, in its Opposition, Future Energy asserts for the first time that the list contained information regarding dealers' "purchasing patterns" which would indicate customer-status. Opp. at 8. However, a court "'may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss' in determining whether to grant the Motion." *E.g.*, *Castillo v. City of San Jose*, No. 24-CV-00701-SVK, 2025 WL 1370811, at *3 n.2 (N.D. Cal. May 12, 2025) (quoting *Schneider v. California Dept. of Corr.*, 151 F.3d 1194, 1197 (9th Cir. 1998)).

Future Energy further argues that ChargePoint's internal policy of routing all calls from Stellantis dealerships and their affiliates to Future Energy "demonstrates 'knowledge' of the customer relationships." Opp. at 13; *see also* Ex. G at 8. The Court is not persuaded. The Addendum prohibits solicitation only of "Affiliated Dealers that are current Customers of [Future Energy]." Addendum § 9(a)(i). If *all* Stellantis-affiliated dealerships were deemed current customers, the limiting phrase "that are current Customers" would serve no function. *See Bayview Hunters Point Cmty. Advocs.*, 366 F.3d at 700 (courts should avoid interpretations that render contract language superfluous). The Addendum therefore cannot reasonably be read to treat all 2,600 Stellantis Affiliated Dealers as current customers of Future Energy.

7

Future Energy has not otherwise alleged any facts that create a reasonable inference that ChargePoint knew which subset of Stellantis Affiliated Dealers were current customers of Future Energy. Accordingly, the Court **GRANTS** ChargePoint's Motion to Dismiss on this ground, **with leave to amend** for the reasons set forth in Section III.E., below.

### c. Future Energy Has Not Plausibly Alleged that ChargePoint Took Any Acts to Affirmatively Solicit a Stellantis Affiliated Dealer

Finally, Future Energy contends that ChargePoint affirmatively solicited Future Energy's customers, relying primarily on the installation of ChargePoint equipment at the Ontario and Michigan Dealerships without Future Energy's awareness. Under California law, solicitation requires "individualized and targeted contact" with a prospective customer. *Blue Mountain Enters., LLC v. Owen*, 74 Cal. App. 5th 537, 554 (2022). To plausibly allege solicitation, a plaintiff must plead specific facts showing affirmative steps taken by the defendant or factual circumstances supporting a reasonable inference of targeted outreach. *See Calsoft Labs, Inc. v. Panchumarthi*, No. 19-cv-04398-NC, 2019 WL 5811300, at *6 (N.D. Cal. Nov. 7, 2019). Courts have found such allegations sufficient where the complaint pleads concrete interactions or coordinated conduct directed at customers. *See, e.g.*, *Gill v. Marsh USA, Inc.*, No. 24-cv-02366-RS, 2024 WL 3463351, at *5 (N.D. Cal. Jul. 18, 2024); *Movement Mortg., LLC v. Scrima*, No. 2:23-cv-02904-DJC-CSK, 2024 WL 3011202, at *7 (E.D. Cal. Jun. 11, 2024).

Here, by contrast, Future Energy alleges only unspecified "communications and sales pursuits" with the dealerships. FAC ¶ 18. These conclusory allegations, standing alone, do not plausibly support an inference that ChargePoint initiated contact with either dealership. *See Colwell Consulting LLC v. Papageorge*, No. 2:24-cv-01824-JCG, 2024 WL 3811677, at *6 (D. Ariz. Aug. 14, 2024). Nor do Future Energy's remaining factual allegations bridge that gap. The only non-conclusory factual allegation is that ChargePoint equipment was ultimately installed at the Ontario and Michigan dealerships. FAC ¶ 19. But the existence of installed equipment supports multiple equally likely explanations: (1) ChargePoint directly solicited the dealership; (2) the dealership independently contacted ChargePoint; or (3) another non-exclusive reseller facilitated the transaction. The FAC alleges no facts making the first explanation more plausible

United States District Court
Northern District of California

than the others.

"When faced with two possible explanations, only one of which can be true and only one of which results in liability, plaintiffs cannot offer allegations that are 'merely consistent with' their favored explanation but are also consistent with the alternative explanation." *In re Century Aluminum Co. Secs. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). Such claims are "stuck in 'neutral territory'" and do not survive a Rule 12(b)(6) motion. *Id.* (quoting *Twombly*, 550 U.S. at 557). That is precisely the case here; neither ChargePoint's social media post announcing the Ontario installation nor the presence of ChargePoint equipment at the Michigan Dealership sheds light on who initiated the transaction. *See* Ex. B; Ex. C.

Thus, Future Energy has failed to plausibly allege facts supporting an inference that ChargePoint directly solicited either the Ontario or Michigan dealership. The Court thus **GRANTS** ChargePoint's Motion to Dismiss on this ground, **with leave to amend** for the reasons set forth in Section III.E., below.

### B.    Count II:  Intentional Interference with Prospective Economic Advantage

Future Energy's second cause of action alleges that ChargePoint intentionally interfered with Future Energy's economic relationships with Stellantis Affiliated Dealers. *See* FAC ¶¶ 44-50. Unlike interference with an existing contract, interference with a prospective economic relationship is not a wrong in itself. *See Korea Supply Co. v. Lockheed Marti Corp.*, 29 Cal.4th 1134, 1158 (2003). Accordingly, a plaintiff asserting intentional interference with prospective economic advantage must allege that the defendant engaged in "independently wrongful" conduct—*i.e.*, conduct that is "unlawful" under some "statutory, regulatory, common law, or other determinable legal standard."[4] *Id.* at 1158-59. Future Energy has failed to do so.

The FAC identifies three categories of purportedly wrongful conduct: (1) ChargePoint's alleged "breach of confidence and misuse of … Future Energy's confidential dealer list," allegedly in violation of a duty of good faith, "separate and apart from any trade secret claim"; (2)

---

[4] ChargePoint also argues that Future Energy has failed to plead each of the remaining elements of intentional interference with prospective economic advantage. *See* Mot. at 18-24. Because the Court dismisses this claim with prejudice for failure to allege an independently wrongful act, the Court need not reach those arguments.

United States District Court
Northern District of California

ChargePoint's alleged affirmative deception in its June 1, 2023 letter; and (3) ChargePoint's alleged bad faith refusal to respond to Future Energy's pre-suit demand letters. FAC ¶ 49. In opposing dismissal, however, Future Energy does not defend the third theory and therefore abandons it. *See* Opp. at 17-18; *Costabile v. Natus Med. Inc.*, 293 D.Supp.3d 994, 1014 (N.D. Cal. 2018). Instead, Future Energy argues that the requisite wrongful conduct consists of ChargePoint's alleged breach of the Addendum's non-solicitation provision, trade secret misappropriation, and promissory fraud. *Id.* None suffices.

As to Future Energy's breach-of-contract argument, "breach of contract cannot, as a matter of law, constitute the 'wrongful' conduct required for the tort of intentional interference with prospective economic advantage." *Vascular Imaging Pros. v. Digirad Corp.*, 401 F.Supp.3d 1005, 1012 (S.D. Cal. 2019). Thus, even if the Court had not separately dismissed Future Energy's breach of contract claim, ChargePoint's alleged breach of the Addendum could not serve as the wrongful act required to support this claim.

Second, Future Energy's reliance on trade secret misappropriation effectively abandons the FAC's original theory that ChargePoint misused confidential information "separate and apart from any trade secret claim." *Compare* Opp. at 17-18 *with* FAC ¶ 49. In any event, any common-law theory premised on the alleged misuse of trade secret information is preempted by CUTSA. *See, e.g. Joby Aero, Inc. v. Archer Aviation Inc.*, No. 25-cv-10703-SVK, 2026 WL 1625376, at *14 (N.D. Cal. Jun. 5, 2026).

Third, Future Energy cannot rely on any purported "affirmative deception" arising from the June 1, 2023 letter, because, as discussed below, that letter does not contain an actionable promise. *See, infra* § III.A.D.

Because Future Energy has failed to allege any independently wrongful act underpinning its claim for intentional interference with prospective economic relationship, the Court **GRANTS** ChargePoint's Motion to dismiss Future Energy's second cause of action **with leave to amend** for the reasons set forth in Section III.E., below.

////

////

10

### C.      Count III:  Trade Secret Misappropriation Under CUTSA

Future Energy's third cause of action is trade secret misappropriation under CUTSA.  *See* FAC 14-15.  Future Energy alleges that ChargePoint misappropriated its confidential  "Stellantis Affiliated Dealer lists, customer data, pricing structures, purchasing histories, contact information and relationship development strategies" in the course of allegedly soliciting Future Energy's customers.  FAC ¶ 52.  A trade secret misappropriation claim under CUTSA has "two primary elements:  (1) the existence of a trade secret and (2) misappropriation of the trade secret." *DocMagic, Inc. v. Ellie Mae, Inc.*, 745 F.Supp.2d 1119, 1145 (N.D. Cal. 2010).  As explained below, Future Energy fails to plausibly allege either element.

### 1.      Future Energy Has Not Adequately Alleged the Existence of a Protectable Trade Secret

Under CUTSA, a trade secret is information that (1) "derives independent economic value … from not being generally known to the public or to other persons …" and (2) is the subject of "reasonable efforts" to maintain its secrecy.  *See* Cal. Civ. Code § 3426.1(d).  Customer lists may qualify as trade secrets under this definition.  Such lists derive economic value because they enable a competitor to "direct its sales efforts to those customers who have already shown a willingness to use a unique type of service…as opposed to a list of people who only might be interested." *Morlife, Inc. v. Perry*, 56 Cal.App.4th 1514, 1522 (1997) (citation omitted). Although portions of a customer list may be publicly available through business directories or other sources, a customer list may nevertheless constitute a trade secret where the company has "expended time and effort identifying customers with particular needs or characteristics" and compiling that information into a valuable business resource.  *Id.* at 1521.

Nonetheless, not every alleged customer list qualifies as a trade secret.  To state a claim for misappropriation, a plaintiff must identify the alleged trade secret with sufficient particularity to distinguish it from information that is readily known.  *Navigation Holdings, LLC v. Molavi,* 445 F.Supp.3d 69, 76 (N.D. Cal. 2020).  Thus, in *Vendavo, Inc. v. Price f(x) AG*, for example, a court in this District dismissed a trade secret claim predicated on allegations of "source code, customer lists and customer related information, pricing information[,]… marketing plans and strategic

11

business development initiatives" because these allegations failed to identify the alleged trade secret with sufficient specificity.  No. 17-cv-06930-RS, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018).  By contrast, the plaintiff in *Navigation Holdings* adequately alleged a protectable customer list by alleging that the database containing each customer's private email address, primary contact person, prior orders and pricing history, together with other proprietary information developed through "hundreds of thousands of hours of research."  445 F. Supp. 3d at 77.

The FAC here does not contain comparable allegations. Specifically, Future Energy merely alleges that it transmitted versions of its "Stellantis Affiliated Dealer Lists" to ChargePoint.  FAC ¶ 14.  Future Energy also initially qualified that the dealer list was "provided by Stellantis."  Ex. G at 2.  Future Energy does not, however, plead any details as to what these customer lists contained, how they derived independent economic value from remaining secret or that they included any details that were the result of Future Energy's own labor or investment.  Only in its Opposition does Future Energy argue that the transmissions consisted of "curated…dataset[s]" containing "dealer-specific contact information, purchasing patterns, facility readiness assessments, and incentive eligibility data."  Opp. at 14-15.  Again, a plaintiff may not amend its complaint through factual assertions raised for the first time in an opposition brief.  *See, supra*, § III.A.2.b.  On the face of the FAC, Future Energy alleges only that it transmitted a customer list to ChargePoint. Without allegations describing the proprietary information contained in that list or explaining how it reflected Future Energy's independent efforts, the FAC does not plausibly allege the existence of a protectable trade secret.

### 2. Future Energy Has Adequately Alleged Reasonable Efforts to Maintain the Secrecy of the Stellantis Affiliated Dealer List

ChargePoint also argues that Future Energy has not plausibly alleged reasonable efforts to maintain the secrecy of the Stellantis dealer list.  *See* Mot. at 26-28.  The Court is not persuaded.

As an initial matter, the Court disagrees with Future Energy's contention that the Reseller Agreement and Addendum imposed "confidentiality obligations restricting the use and disclosure of proprietary information," including Future Energy's Stellantis Dealer lists.  FAC ¶ 52.  On their

United States District Court
Northern District of California

face, these agreements contain only one-sided provisions restricting the use and disclosure of *ChargePoint's* proprietary information. *See* Ex. A at 7-8.

However, contractual confidentiality provisions are not the only means of demonstrating reasonable efforts to maintain secrecy. In *Glob. Truss Am. LLC v. GLP German Light Prods. Inc.*, the court found reasonable efforts where a company distributed confidential price lists to more than 500 dealers but labeled the materials "confidential" and instructed recipients not to disclose them. No. 11-cv-00168-SJO (SSx), 2011 WL 13220296, at *15 (C.D. Cal. Dec. 1, 2011). Likewise in *Welenco, Inc. v. Corbell*, the court found reasonable efforts where the company circulated internal memoranda expressly identifying its customer lists as confidential. 126 F.Supp.3d 1154, 1174 (E.D. Cal. 2015). Here, Future Energy alleges that it disclosed the dealer lists only to a limited group of identified ChargePoint personnel, rather than broadly disseminating them. FAC ¶ 52. Further, the attached emails reflect that Future Energy labeled the initial attachment "confidential" and instructed ChargePoint to share it only with the "necessary … folks." Ex. G at 2. At the pleading stage, these allegations are sufficient to plausibly allege that Future Energy took reasonable efforts to maintain the secrecy of the dealer lists.

### 3. Future Energy Has Not Plausibly Alleged Misappropriation

Under CUTSA, misappropriation means: (1) acquisition of a trade secret by improper means or (2) disclosure or (3) use of a trade secret without consent. Cal. Civ. Code § 3426.1(b).

Future Energy does not allege that ChargePoint acquired the dealer list through improper means or that it improperly disclosed the list. *See* FAC ¶¶ 52-54. Future Energy's only theory of misappropriation is improper use. *Id.* ¶ 54. The Court finds Future Energy's allegations under this theory insufficient.

Future Energy alleges that ChargePoint used the dealer list to "directly solicit" Future Energy's customers and "divert business opportunities" to ChargePoint and away from Future Energy. *Id.* But, as discussed above, the FAC does not plausibly allege that ChargePoint solicited Stellantis dealerships in violation of the Addendum's non-solicitation provision. *See, supra* § III.A.2.C. Thus, because Future Energy's only theory of improper use is direct solicitation, and those factual allegations fail, these allegations are also insufficient to plausibly allege

13

misappropriation of the dealer list.  *See, e.g.*, *Apple Inc. v. Rivos, Inc.*, No. 5:22-cv-02637-EJD, 2023 WL 5183034, at *7 (N.D. Cal. Aug. 11, 2023) (ex-employee's mere access to confidential source code was insufficient to allege use in his competing venture).

* * *

Accordingly, the Court finds that Future Energy has failed to plausibly allege either the existence of a protectable trade secret or misappropriation.  Thus, the Court **GRANTS** ChargePoint's Motion to Dismiss on this ground, **with leave to amend** for the reasons set forth in Section III.E., below.

### D.    Count IV:  Promissory Fraud

Future Energy's final cause of action is for promissory fraud.  Future Energy alleges that the June 1, 2023 letter from ChargePoint contained a promise not to solicit Future Energy's customers, which ChargePoint allegedly made without any intent to honor it.  FAC ¶¶ 57-58.  Claims sounding in fraud are subject to Rule 9(b)'s heightened pleading standard, which requires a plaintiff to set forth the "who, what, when, where, and how" of the alleged misrepresentation.  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).

Future Energy's claim fails because it does not adequately allege the existence of any actionable promise.  The letter states, in relevant part:

> I [Mr. McKinnon] wanted to get back to you in connection with your concerns regarding the use and access to ChargePoint Property, Services and Applications.
>
> ChargePoint is not looking to obtain any rights to Future Energy's proprietary *data* or Interface(TM) *software*. … In ChargePoint's opinion, Future Energy, through its use of Interface (TM), is not creating any derivative works.  Future Energy is simply being given access to and the ability to use ChargePoint's Services and Property….

Ex. D (emphasis added).

Future Energy contends that the letter contains a promise that "no competitive use of Future Energy's data or relationships would occur."  FAC ¶ 21.  The letter contains no such language, and the Court does not read the letter as implying such a broad promise.  The opening paragraph expressly references Future Energy's concerns regarding access to and use of

14

ChargePoint's "Property, Services and Applications" and the body of the letter explains ChargePoint's position that Future Energy's proprietary software does not constitute a derivative work of ChargePoint's technology. Nowhere does the letter reference customer relationships, dealership accounts, solicitation, or restrictions on ChargePoint's ability to compete for customers.

Future Energy asserts that the letter was sent in the context of and in response to concerns regarding ChargePoint's encroachment on Future Energy's dealer relationships. Opp. at 23. But neither the FAC nor the letter itself supports that characterization. The FAC contains no allegations regarding the circumstances that prompted the letter, and the text of the letter speaks exclusively to software access and proprietary technology. *See* FAC ¶¶ 21, 40. Although the Court generally accepts factual allegations as true at the pleading stage, it need not accept allegations that are contradicted by exhibits attached to the complaint. *Williams v. Bank of Am. Nat'l Ass'n*, No. 15-cv-00792-LHK, 2015 WL 6602403, at *7 (N.D. Cal. Oct. 30, 2015) (quoting *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

Accordingly, the Court declines to construe the letter as a promise by ChargePoint not to solicit Future Energy's customers or otherwise refrain from competing for dealership business. Because Future Energy fails to identify any such promise—the "what" of the alleged misrepresentation—it cannot satisfy Rule 9(b)'s requirement. Accordingly, the Court **GRANTS** ChargePoint's Motion to Dismiss Future Energy's fourth cause of action **with leave to amend.**

### E.    The Court Grants Limited Leave to Amend

The Court now addresses whether and to what extent Future Energy may amend its claims. Where a court finds that dismissal is warranted, it should ordinarily "grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc).

With respect to the breach of contract claim, the Court **dismisses the claim with leave to amend**, because it is not clear that an attempt to allege facts sufficient to plausibly show knowing solicitation of Future Energy's current customers within the meaning of the Addendum would be futile.

15

United States District Court
Northern District of California

As to the  promissory fraud claim, the Court finds that the June 1, 2023 letter simply does not contain an actionable promise and, absent such promise, Future Energy cannot state a fraud claim.  Nevertheless, the Court cannot conclude that amendment would be futile.  If Future Energy can plausibly allege that ChargePoint made an actionable promise not to solicit Future Energy's customers through communications or conduct independent from the letter, the Court does not foreclose such allegations.  Thus, the Court **dismisses the claim to the extent it arises out of the June 1, 2023 letter and grants leave to amend otherwise**.

For similar reasons, the Court **dismisses the intentional interference claim with leave to amend**.  As pleaded, Future Energy fails to identify any independently wrongful conduct sufficient to support liability under *Korea Supply Co. v. Lockheed Marti Corp.*, 29 Cal.4th 1134, 1158 (2003).  Two of Future Energy's alternative theories are legally barred (trade secret theory via CUTSA preemption and breach of contract, which is insufficient as a matter of law).  However, if Future Energy can plausibly allege an actionable promise independent of the June 1, 2023 letter, that same conduct could potentially satisfy the independently wrongful act requirement.  Accordingly, the Court cannot conclude that amendment would be futile.

Finally, with respect to Future Energy's CUTSA claim, the Court **dismisses the claim with leave to amend**.  Although Future Energy's current complaint does not adequately allege use of the dealer list in solicitation or that the list is a trade secret, it is not clear that such allegations would be futile.

## III.   CONCLUSION

For the reasons set forth above, ChargePoint's Motion to Dismiss is **GRANTED** and **leave to amend is granted** as follows:

- Future Energy's breach of contract claim (Count I) is **DISMISSED with leave to amend**;
- Future Energy's intentional interference with prospective economic advantage claim (Count II) is **DISMISSED with leave to amend**, except to the extent it arises out of the June 1, 2023 letter;

////

16

United States District Court
Northern District of California

- Future Energy's trade secret misappropriation claim under CUTSA (Count III) is **DISMISSED with leave to amend**; and

- Future Energy's promissory fraud claim (Count IV) is **DISMISSED with leave to amend**, except to the extent it arises out of the June 1, 2023 letter.

Future Energy's second amended complaint shall be due **no later than July 28, 2026.** Additionally, the Court resets the initial case management conference in this case for **September 8, 2026**.

**SO ORDERED.**

Dated: July 7, 2026

SUSAN VAN KEULEN
United States Magistrate Judge

17